It was moved on the part of the plaintiff that a special fi. fa. should issue to the sheriff to levy the debt de bonis testatoris, if any to be found, and if not, de bonis propriis of the administrator.
Spillar argued e contra that there could be no judgment de bonispropriis against an executor or administrator but when he pleaded a false plea, the falsity whereof was within his own knowledge, and which plea, were it true, would be a perpetual bar to the plaintiff.
It is contended that before an executor can be charged de bonispropriis, some process should be issued against him to which he might show by pleading that he ought not be charged de bonis propriis; and certainly if in a case like the present the defendant may plead plene administravit, such process should go before a judgment de bonis propriis shall be entered. It is to be considered, then, in the first place, where were asci. fa. now issued, could the defendant be admitted to plead to that,plene administravit, as to which the rule in this case, as in all others, is this: Where the defendant to the original action might have pleaded a matter of defense, and failed to do it at the proper time allowed by law for that purpose, he can never afterwards be admitted to plead that matter to any other suit grounded upon that original suit. He cannot plead to asci. fa. any defense he might have pleaded to the original action out of which it is derived. Now, it is evident he might have pleaded pleneadministravit to the former action, if the fact were such that he had fully administered; and, therefore, should a sci. fa. now issue, it could be of no service to the defendant, as to any defense he might set up under it. As to the manner of charging an executor de bonis propriis, the practice has varied at different times in different courts; sometimes they have proceeded by way of sci. fa. inquiry, whereupon nulla bona returned, the sheriff was commanded to make the money as *Page 239 
before; and if he could find no goods of the testator, then to inquire by a jury whether the defendant had wasted; and if the jury found a devastavit, then to return the verdict to court; whereupon there went out a sci. fa. against the executor to show cause why the plaintiff should not have satisfaction de bonis propriis. Off. of Executors, 166. At other times the practice hath been for the sheriff to return a devastavit; or, if he is unwilling to do so, for the court to compel him to return a devastavit
(Off. of Exrs., 168; God., 199), and thereupon to issue a writ of execution commanding him to levy de bonis propriis; or, where the sheriff returns nulla bona, to issue a special fi. fa. commanding him to levy the debt de bonis testatoris, or if it could appear that the (300) executor had wasted, etc., then to levy it of his own goods. Off. of Exrs., 167, 168; Pottifer's case, 5 Re. As to the sci. fa. inquiry, andsci. fa. thereupon, it is said in the books before cited that that course hath been long disused, it not being so beneficial a course for the defendant as that which directs the sheriff to return devastavit; for that, in the first case, if the verdict be wrong, the defendant is without redress, no remedy lying against the jury; attaint will not lie, being not a verdict upon an issue joined, and he has no remedy against the sheriff, for he is justified in his return by the verdict. However, the other way of returning a devastavit seems equally useless; for if the defendant hath failed to plead a want of assets, it is an admission of them, and a jury will not have it in their power to say non devastavit. So if the sheriff, after such omission, returns devastavit, he cannot be liable to an action for that return; for the jury, as well as the defendant, are estopped by the record to say that he did not waste as the sheriff hath returned. Salk., 310; L. Ray., 589. Either of these methods, then, can answer no valuable purpose. The defendant by omitting to plead want of assets becomes so absolutely liable to answer de bonis propriis that no plea he can make, nor any finding of a jury, can afterwards exempt him. If the defendant can have no benefit by either of these modes but that of delay, it follows that the law will not require either of them to be pursued; for in directing process the law always supposes the defendant may have some defense to make; where he can have none, it is useless and nugatory to issue process to him. In every possible case at the common law where the defendant omits to plead want of assets, whether it happen by confession of the action, judgment by default, or otherwise, such omission amounts to an admission of assets. It must be deemed that there are assets enough when the executor whose business it is will not say the contrary. And when a judgment is once given against an executor, who has assets enough, he is bound to produce them, or pay the judgment himself de bonis propriis. 3 Term, 685. To permit the *Page 240 
defendant to plead a want of assets, after the proper time for pleading is passed, is not only against that order which in all cases is observed, but it tends to make proceedings in court infinite, and to introduce delays, which the order of pleading was invented to prevent; and, besides, to what time will such a plea after judgment relate? If it relate (301) to the time when it is put in, then the assets may have been applied in the intermediate time in discharge of other debts. This enables the executor, after suit instituted against him, and even after judgment upon it, to pay other creditors, which is directly against law; for after suit instituted, he cannot, voluntarily, pay any other creditor of equal degree first. Or will it relate to the time when process in the original suit was first taken out? Shall the plea state that at the time of the leading process in the first suit taken out, or any time since, he had not in his hands any of the goods, etc., of the testator to be administered? If this must be stated, then why not enforce him to plead in the first instance? Is it not better that he should do so and show his situation at once than put the plaintiff to the fruitless expense of a second suit by sci. fa. It would be better, as it would save the additional expense and litigation of a second suit. That is a strong argument to prove that the law requires it. It cannot be supposed in a case which so often happens that the law has not fixed upon that mode of conducting the pleadings that is best calculated to oust delays and prevent litigation and expense; and then what reason can there be why a special fi. fa. to levy debonis testatoris si et si non de bonis propriis shall not issue at once? The return of nulla bona is then as complete a proof of a devastavit as if that were returned expressly, for if by the previous judgment and proceedings it appears to the court he has assets, and is bound to produce them or pay the debt, and also by the sheriff's return of nulla bona that he has not produced them, does it not follow that he is by what already appears upon record liable de bonis propriis? Does the record not prove that he has no other alternative, and can make no plea to exempt his own proper goods? The return of nulla bona proves his liability as completely as that of a devastavit, since both must inevitably end in the same consequence — that of an execution de bonis propriis. It cannot, therefore, be of any service to the defendant to require a sci. fa. or a return of a devastavit; they can be more than forms leading to the same event, as that of a special fi. fa. issued upon a return of nulla bona, and as the sci. fa. grounded immediately upon the return of nulla bona or upon the finding of nulla bona upon a sci. fa. inquiry can be of no service whatever to the defendant, as he cannot avail himself of the plea of pleneadministravit under them, not having done it before, there is no good legal reason for using these modes *Page 241 
preferably to that of a special fi. fa. upon the return of nulla (302)bona. The ultimate proceeding either way will turn out the same thing, and nothing more will be gained by the sci. fa. than a few terms longer delay to the plaintiff.
But if it can be supposed the common law is not so, yet since the passing the act of 1784 there is the greatest reason and justice in the world that the executor or administrator who fails to plead pleneadministravit, etc., should pay the debt out of his own pocket, for by such omission he effectually hinders the creditor from having any satisfaction out of the land. Since, therefore, a further process by sci. fa. against the defendant will be of no real benefit to him, by letting him in to plead fully administered, and as the issuing of a special fi. fa. upon a return of nulla bona is sanctioned by the Office of Executors, a book of high authority upon this subject, and also by the judgment in Pottifer's case, 5 Re., 32, and as the principle of these cases is recognized in a decision of the Court last spring at Fayetteville, let a special fi. fa. now issue, reciting the return of nulla bona, and commanding the sheriff to levy the debt of the goods of the intestate in the hands of the administrator if to be found, and if not to be found, then of the proper goods of the administrator himself; which was done accordingly.
See Parker v. Stephens, ante, 218.
Cited: King v. Howard, 15 N.C. 583.